Case number 24-2011, Kenneth Lowe v. Walbro LLC, oral argument not to exceed 15 minutes per side. Mr. Marco, for the appellant, you may proceed. Thank you. Good morning, your honors. May it please this honorable court, John Marco on behalf of the plaintiff appellant, Kenneth James Lowe. I know this court's familiar with this matter and the procedural history as well as the facts, since it's already issued a published opinion on it previously before the trial. But as you know, this is an age discrimination case brought under Michigan's Elliott Larson Civil Rights Act. A jury trial was held in October of 2023 after this court remanded for a trial and a unanimous jury found in favor of the plaintiff and issued a verdict in his favor on this matter. The district court, Judge Ludington, after a year, issued an opinion granting defendant's motion for judgment as a matter of law and we timely filed an appeal. I know, as I said, that this court's familiar with the facts, but the facts at trial largely tracked some of the facts in the summary judgment stage with some minor differences. Ken Lowe was born on a farm in 1958. He began working- Let me ask you, counsel, did you not, you didn't ask on direct examination about the termination conversation that your client had and then you tried to sort of rehabilitate that on rebuttal, I guess? Why didn't you ask about that pivotal conversation, the one that was sort of the critical linchpin of our initial decision? Why didn't you ask about that on direct? Your Honor, hindsight's always 20-20. Was the main feature in our, there's no reason that we remanded the case the first time. I understand, Judge. As I, Your Honor, as I look back at the transcript, I certainly wish I could have went back and put a little finer touch on certain things. My client was very nervous. This was, he's a man from the thumb of Michigan, rural Michigan. We were in the heat of the jury trial on this matter. And, you know, I should have asked him a little more precisely about it. As you can tell from the record with Mr. Lowe, the transcript's a little muddled. You know, he kind of walks back as brother counsel, cross-examine him initially, and then he kind of walks some things back. I tried to refresh his recollection with the deposition transcript, and Judge Langton wouldn't allow me to do that. I believe that some of the deposition was taken out of context on cross-examination. As I cited in my reply brief, the testimony is not as crystal clear as the defense would like to make it. For example, Mr. Lowe testified specifically that he testified that there was age-related comments, that he testified about those previously. This is on page ID 27, 2871 and 2991. And that there was age brought up in the termination meeting. He was clear that the HR manager brought up age twice, at least twice, during the termination meeting. Right. But to say that age was not a factor, that's what Rand said, that it was not a factor when age was mentioned twice. Well, see, it was unclear from his testimony regarding the age discussion at the termination meeting. There was, however, two separate witnesses who presented evidence to the jury of the statements made. The first was defendant's own expert, Dr. Benedict, who on page 3157 to 3160 specifically stated that the statement was made, quote, you're getting up there in years, you're getting close to retirement age. That was made by Davidson during the retirement meeting. Counsel, why isn't that double your say? There was no objection made to that, Your Honor. It was presented to the jury. That issue is not preserved. So how can we consider that as substantive evidence? It came in without objection at trial. There was no objection to that being made at the time, Your Honor. If they wanted to preserve an objection on that, they would have had to lodge an objection at trial. Plus, this was a medical examination that was conducted pursuant to the federal rules of court of my client. So that was admissible evidence, which is why it didn't draw an objection. The second witness who testified to that was a psychiatrist by the name of Dr. Gerald Shiner, who testified on page 3081. He told me, quote, you're getting up there in retirement age. We're going in a different direction. The jury, based on all the evidence that was presented to them, was free to judge the credibility of the witnesses and decide maybe Mr. Lowe's having a lapse in memory when he was asked on cross-examination in a federal court. A guy who's grew up on a farm and is from rural Michigan and was quite intimidating. I know you're used to it, and I'm a lot more used to being in a courtroom. But for Mr. Lowe, the jury was free to feel that he might have had a lapse in memory or that he was nervous. And so remember, this happened five years ago. I mean, that's what good lawyers do is they walk their nervous clients through a direct examination. So I appreciate the points you're making, but it's kind of a team effort. Can I ask you a question? Do we have to accept the experts, the point you're making, the experts for reference to your client's prior deposition testimony? If we don't accept that as a basis to uphold the verdict based on some admittance of direct evidence, does the whole case rise on the expert and the expert's testimony where she repeats the deposition testimony that she had read as part of her expert report? I don't believe so, Your Honor. First of all, there's two experts. There's two medical experts. They both testified that that was said, and it was based on personal evaluations. It wasn't based on them reading a deposition transcript. I just want to make sure that's clear. That was based on a personal forensic examination of the plaintiff. But no, I don't believe that it completely rises and falls based on... There's ambiguity in Ken's testimony about the termination meeting, and neither side cleared it up completely. Specifically, there's other evidence, Your Honor, as I put it out in my brief. There's a 40-year anniversary ceremony for Mr. Lowe, which is commemorating his age at the company, his time at the company, where the decision makers said, quote, old man, you've been here longer than I've been alive. Aren't you ready to retire? That is coupled with significant other ageist comments that are made by the decision maker in this case, Mr. Davidson. Old man, old guy, old dog. Quote, you're losing a step. Quote, let the old guy handle it. When they would have meetings, he would say this in front of other individuals. There's the termination meeting, which I understand there's a dispute over what exactly occurred, and that's unclear. For example, Ms. Rahr, the HR person says, I never said the word age whatsoever. The other testimony is that age was brought up at least twice. There was a script that was used during that meeting that was never provided to us and never provided in discovery. Let me ask you this about all these other comments. The 40-year ceremony was a year and a half before he was terminated. So what's your causal connection between assuming, you know, of course, Davidson testified just yet. He said it was your client that brought up that he had been alive longer. He had worked there longer than Davidson had been alive. But, you know, your client says no, it was Davidson that made that. So let's assume the jury could decide it was your, you know, that it was Davidson that said it. But it was still no question that this was a year and a half before termination. So where's your causal connection to show that that comment was linked to his termination? Well, yes, Your Honor. So it's important to understand Davidson started working in June of 2016. He was new to the company, 35 years old. Within, by October 2016, he makes this comment about Mr. Lowe at the ceremony and then continues with ageist comments being made over his tenure, Mr. Lowe's tenure at the company until Mr. Lowe was finally terminated in 2018. So I understand that the 40-year anniversary did happen in October of 2016. But the jury was allowed to consider that was coupled with other ageist comments that were made over a period of time continuously by Mr. Davidson, the decision maker. Then you are arguing that these other comments are direct evidence of discrimination or indirect? I think that they could be either, Your Honor. I think that more likely, they're probably indirect evidence of discrimination. But I think the award ceremony is direct evidence because he specifically says, aren't you ready to retire? This is the decision maker who ultimately makes the decision to terminate Mr. Lowe, says, quote, aren't you ready to retire? And he calls him an old man and says, you've been here longer than I've been alive. That's direct evidence of discrimination. The other question is, well, a year and a half if it had been made at the termination meeting, absolutely, because that's why we reversed. But now we've got a different issue. The classic cases of proving indirect discrimination would be that, hey, somebody in a non-protected group was treated differently than your client or his position was replaced by a younger person. You don't have either of those factors here, do you? Well, what they did was they terminated a position elimination. They terminated Mr. Lowe. And then they gave his job responsibilities, which were subsumed by Mr. Davidson, who was younger, and by Oosterbrook and Windsor, who were both younger than Mr. Lowe. So Mr. Lowe was the oldest person of those individuals. He was terminated. And then his job responsibilities were allegedly given to these other individuals, all of whom are younger than Mr. Lowe. Do you have any authority for the proposition that if you just give some of the responsibilities to a younger employee, that that satisfies the comparator analysis? The law says specifically that the comparator does not have to be an exacting analysis. In other words, there are situations, such as in this case. I'm just asking for a case where there was a delegation of just a portion of the responsibilities, and that was deemed to be evidence of this comparator discrimination. Judge Bush, I don't have that on the tip of my tongue, and I apologize for that. But I know that the case law is very clear in the Sixth Circuit that it does not need to be an exact comparator relationship. Otherwise, you'd have a situation where a defendant could simply put termination as a position elimination, give the responsibilities to other individuals, and say, well, if we divide it up between two individuals, then we can't be held liable for age discrimination or whatever type of discrimination whatsoever. So the law doesn't operate like that in the circuit in terms of the termination. I apologize. I don't have a specific case. I would also point out in the last minute I have, the defendant's inconsistent reasons for termination were plenty at the trial. First, they said that he was terminated simply for position elimination. Then they said, well, there was performance issues, which we debunked at trial through calling other witnesses. Then they also raised separately behavioral issues. Their reason for terminating Mr. Lowe has shifted over the course of this case, and it was inconsistent at trial. Finally, a very important piece of evidence that was ordered by Judge Lighting to be turned over was this rank spreadsheet. So Mr. Lowe's boss, 35-year-old Davidson, testified that he based Mr. Lowe's termination on a spreadsheet that said he was in the bottom 10 percent of all the people at this plant. Judge Ludington ordered them to turn that spreadsheet over. They did, and when they did, it showed that Mr. Lowe was not, in fact, in the bottom 10 percent and that his job was not in jeopardy. It contradicted their reason for termination, which is evidence of pretext. Mark, I have one just quick legal question about causation and the causal standard. In our last opinion, we sort of noted that the Michigan courts were not uniform in what causal standard they used. Some said that unlawful discrimination had to be a motivating factor in the employer's actions, and then some courts were using a but-for causal standard. Has there been any update to Michigan law since our last opinion? That has not been definitively determined by Michigan courts that I'm aware of. However, if you look at the trend in the cases, I cited you the Suboca case, Suboca v. Olympia, which is an individual who brought an age discrimination claim. That's a recent case of the Michigan Court of Appeals, and in Suboca, the evidence was pretty scant. In that, the non-decision maker told the plaintiff something to the effect of, quote, you're just old, quote, you're getting old, or quote, you're old. Very scant evidence in that case, and the Michigan court, this is a 2025 case, and in that case, the Court of Appeals said that there was sufficient evidence to get to a jury. There was a question of fact for the jury to decide. So, I think if you look at the trend, while they haven't specifically, the Michigan Supreme Court has not specifically decided that issue, as you pointed out in your original opinion that there's a conflict there, if you look at the trend in Suboca and the other cases, I think that it's for a less onerous standard under Elliott Larson's Civil Rights Act. Okay, thank you. Thank you, Mr. Marco. Did you reserve three minutes for rebuttal? Yes, your honor. You have that time. Thank you. I may we hear from the other counsel, please. Thank you, Judge Bush, and thank you, everyone, for allowing me to address the court this morning. I'm going to essentially, unless the court has any questions, of course, I'm just going to kind of track what's happened thus far with regard to the argument that's been made. Mr. Marco's statement that the facts track at summary judgment with understatement of 2025. Judge Raylor, as you mentioned, in this court's prior opinion, which I also argued before your honors, you're absolutely right. The linchpin to that entire decision was this alleged comment that was made during the termination meeting, and there is absolutely no ambiguity whatsoever that plaintiff at trial testified that that comment was not made. He had a couple of opportunities, actually, to correct me if I was wrong when I asked him about that particular comment, and this was the testimony on that particular piece. I said, so when Mr. Davidson said, hyphen, hyphen, testified, I should say, he testified under oath that he didn't say anything about your age or retirement during the separation meeting. That's truthful testimony. Answer, that's truthful. Yes. Question, so you admit today in front of this jury that Mr. Davidson never said anything about age or retirement during the separation meeting, right? Answer, not during the separation meeting. I mean, that's clear and unequivocal, and this notion that somehow the jury permitted to consider that alleged comment because Mr. Marco asked a question of our expert witness about that on cross-examination is asinine. That would be like going to a criminal assault trial. Did you object to that question on hearsay grounds or any other grounds? No, I didn't object on hearsay grounds. Asinine is a really strong word to use in court, so I would not use that word in the future. I'm sorry, appreciate it. But, you know, your friend on the other side makes the point that you didn't object to the hearsay, and I'm not sure what we do with that. I might think it's hearsay, but I also have to be faithful to the record, so. I appreciate your original comment. I apologize for it. I think Judge Bush is right, and I'll tell you why I didn't object and why I think it is double hearsay for purposes of what we're here for today. When the question was asked in court, all Mr. Marco asked is whether plaintiff told her that when they met. He did. And as we point out in our brief, all that shows is that he lied not once, not twice, but apparently three times now when he told that to his own expert. It was remarkable that we almost had the exact same thing transpire at trial that we did during the deposition. If you recall, way back when, when I argued this the first time, this magical comment that plaintiff completely admitted never was made occurred after a break during the deposition. And we almost had a redo of that exact same scenario during the trial. Thankfully, Judge Ludington sustained my objection and didn't allow that to happen. But I didn't care at the time of the trial whether that testimony was elicited because, in my view, it simply showed that plaintiff did, in fact, tell our expert that that comment was made when he met with her. That's all that that showed. Now, here we are after the trial, and plaintiff's trying to utilize that testimony to prove that it was actually said during the termination meeting. That is double hearsay. So, the testimony at this point is being used for an entirely different purpose than it was used during the hearing. All she was asked during the hearing is, did he tell you that? And she said, yes. That apparently is true because our expert knows that. The key question then is, can that be used now to be substantive evidence that he did actually, or that Davidson actually, told Lovatt at the termination meeting? Or is it because it was all part of Dr. Benedict's deposition? Does that automatically exclude it from being considered for anything other than impeachment purposes? Judge Gilman, you hit it right on the head, right? I mean, that's exactly right. Mr. Marco was asking our expert if he, in fact, made that comment to her because apparently, during her testimony, she initially forgot that he told her that during their session together. So, the sum total of that is, did plaintiff tell you this when you met? She said, yes. Now, we're trying to get to the point of using what he told her during their time together to prove the truth of the matter asserted, which is that Mr. Davidson actually said that. And so, that is double hearsay. And more importantly, it's completely contradicted by the plaintiff's trial testimony. I think I know the answer to this question, but I just want to confirm this. Dr. Benedict was introduced only for expert opinion, not as a fact witness? That is correct. She was only there to testify about Mr. Lowe's psychological damages or lack thereof. And so, the whole line of testimony with that particular question was about whether or not he mentioned this to her when they met. So, it was a basis of her opinion at most, but she was not being introduced to actually say whether the fact was or not. Yes. Thank you. That's my point, Your Honor. That was not being introduced to prove that the statement was actually made. It was actually the line of questioning was essentially to impeach our expert when she testified that she didn't recall him mentioning anything about that at all when she and plaintiff met. That was it. And that's why at the time that the testimony was elicited, I wasn't that concerned about it because that was the sole purpose for the question. You don't remember that he said this when you met? And she obviously ended up recalling that because her report said it, that Mr. Lowe made that comment to her when they met. She wasn't asked whether she believed it was actually said. She clearly wasn't in the termination meeting, so she wasn't an eyewitness to the, I'm not even going to call it the comment. The comment was completely disavowed at trial. So, the analogy I was trying to draw is if we had like a criminal trial where the victim of the case claimed that she or he was assaulted by someone, and then at trial admitted that the assault never occurred, but the prosecution calls a police officer to say, did the victim tell you that he or she was assaulted by this individual? And the police officer says, yes, I was told that. There'd be no way you could convict on that because the victim him or herself said it never occurred at trial. That is exactly what we have here. We have a plaintiff admitting that the, as Judge Radler said, the linchpin of the case never occurred, unequivocal. And now plaintiff's counsel trying to backdoor that in based on a comment or a discussion that the plaintiff had out of court with an expert that is, that at the time of the, when they were meeting and then again at trial, there was, they weren't discussing whether the comment was actually made. They were discussing all of this in the context of background. And then at trial, he completely disavows that it was ever made. So, that testimony vis-a-vis the expert is a complete red herring. It's debunked by plaintiff himself. It's double hearsay. It was never offered for the truth of the matter asserted at trial. It was simply for impeachment purposes. And as Judge Bush mentioned, it was offered by an expert who was there for damages purposes only, not for any factual issue relating to the case. So, let me ask this on a different little area here. How do you explain the total flip-flop by the district judge though? I mean, at the close of all the plaintiff's proof, you move for what in state court would be called a directed verdict under now, you know, and he says, no, no, there's enough evidence to go to the jury. Then after the trial and they find from the jury finds for the plaintiff, you come back with a renewed motion for judgment as a matter of law. And now he flip-flops and says, oh, I guess there wasn't enough evidence to go to the jury. How do you explain that? Well, Judge Gilman, that's a good question. And I don't think I'm completely in the right shoes to be answering that particular question. But the best way I'll answer it is as follows. This court is review. So, regardless of essentially, regardless of what the lower court ordered, one of us was going to be filing an appeal, presumably, and this court is reviewing the record below de novo. So, regardless of what Judge Ludington ruled upon, and I obviously, I believe he got it right when he granted our motion post-trial, this court can look at all of the evidence and determine whether or not age was a motivating factor. And of course, it was not. The other way I would answer that is when he ruled on our motion, which is a Rule 50B motion, obviously, Rule 50B contemplates, it's a renewed motion. So, the only way you can have Rule 50B is if the initial motion for directed verdict is denied. I'm going to just, I'll be honest, I'm going to speculate here because if you recall in looking at Judge Ludington's comments during the trial, he noted when he initially denied our motion for directed verdict, which of course was before, you know, the case was fully tried, it was only after plaintiff had put his evidence on, he indicated that this court determined that there was sufficient evidence. I can only presume he looked after reading our briefing and looking back at this court's actual opinion, he came to the conclusion that he was wrong because this court did not rule on any other alleged comments other than the one that we've been focusing on quite a bit today, the one that was disavowed. So, you know, Judge Ludington doesn't really explain it to that level of detail in his opinion why he decided that there wasn't sufficient evidence, but given the fact that this court is reviewing the evidence de novo, I'm not entirely sure that his rationale, you know, obviously, I prefer that you agree with him, but even if you disagree with him, you could still affirm the decision because you're reviewing this de novo. And so I think he also, I'm just, again, I'm speculating here, I think he had the benefit of the briefing at that point in time and looking at everything that your honors have kind of teed up again today. So if we don't have this comment that was made during the termination meeting with plaintiffs completely admitted unequivocally that he did not, then we just have some alleged comments that are completely unrelated to the termination decision. We have the one at the 40-year ceremony that's a year and a half earlier, and then we have these just amorphous kind of nondescript comments that have, don't, really don't even show any animus, much less being connected to the termination decision. So Judge Gilman, I'd like to, I'm sorry, I'm sorry, what you're the document of the ranking that I believe Mr. Davidson had testified that that it existed, but you couldn't produce it. Why couldn't that be an inference of that would support the plaintiff here such that it could sustain the verdict? Well, yeah, let me just provide a little bit of background on that because this thing has completely twisted, and I'm not sure what happened. So we did actually produce it. It ended up being the subject of a motion during the trial. What we didn't realize when we produced the document, it was a spreadsheet, and there was a hidden cell in the spreadsheet, and the document that we actually produced and that the jury saw was not the one that had the hidden cell in it. And so I don't know what happened at the trial court level that led to this instruction. Quite frankly, I think it was completely inappropriate because we did produce it. But nonetheless, that document is a complete red herring for a couple of reasons. First and foremost, Mr. Davidson testified that Walbro did not rely on that document for any reason whatsoever relative to plaintiff separation. The only reason that document even became part of the case is because Mr. Davidson was asked about it during the trial by plaintiff's counsel. Walbro has never relied on that document as a basis for substantiating the reason for the position elimination. In fact, it's the exact opposite. Mr. Davidson said we didn't utilize that document for any purpose vis-a-vis plaintiff separation because if you recall, that document was in connection with a talent upgrade that Mr. Lowe was not part of. Mr. Lowe was not part of the talent upgrade. So I don't even know what adverse inference could be drawn from the document. Plaintiff is trying to make the adverse inference that Mr. Davidson testified that Lowe was a poor performer. That document would show to the contrary and therefore the jury could draw an adverse inference. None of that is true. Walbro did not eliminate the position because Mr. Lowe was a poor performer. Walbro did not rely on that document as a basis for the decision to eliminate the position. I have no idea what adverse inference the jury could draw. Let's assume for the sake of argument that the jury could believe that the document showed that plaintiff was an excellent performer. Great. He was not terminated from Walbro due to poor performance. It was a position elimination. So that document has no bearing whatsoever on the decision-making process or Tom Davidson's state of mind or anyone else's state of mind. Can I just ask you the question I asked your friend on the other side about the causation standard in Michigan? We flagged down our opening opinion that there were some differences. Have you seen any evolution in the law since our last opinion? I can't sit here, Your Honor, and tell you definitively yes or no this is what it is. What I will tell you as much as I'd love to advocate for a but-for standard for this panel, the jury instruction that was provided during trial is whether age was a motivating factor. That was the evidentiary standard, if you will, or the burden of proof, if you will, that the jury was viewing the evidence through the lens of. That is the jury instruction. Again, I'd like to tell you it was but-for, but to be completely intellectually honest, the jury was asked to decide whether age was a motivating factor. That is still part of the standard jury instructions in Michigan. Obviously, I believe under either standard, Judge Luddington got it right, and even under de novo review, there is not sufficient evidence at trial to prove that age was a motivating factor with regard to the position elimination. Thank you. Thank you. Thank you. Mr. Marco, do you have a rebuttal? You're on mute. I'd like to point out not only did defense counsel not object at the time of trial to multiple statements about Mr. Lowe's comments during the termination meeting, but it was never briefed. Never once in their brief are you going to find the words hearsay related to those comments. Never once did they argue in their brief at any point in time, whether here or below, that those comments should not be considered as substantive evidence. I'm hearing it for the first time during oral argument today. It was not just Dr. Benedict who at first denied that those statements were ever made, similar to how they say Ken Lowe denied, she denied, but it was also on page 3081, Dr. Shiner who stated, quote, he testified, quote, he presented himself, he went there, there was a human representative of human resources and his boss. He was told to have a seat. When he asked about what it was about, he was told that his job was going to be eliminated, it was going to be given to two or three other people. When he asked why it was happening, he told me that he was told, quote, you're getting up there in years and at retirement age, we're going in a different direction. Did you point out this testimony to the district court in the briefing on the motion? I'd have to go back and look, Judge Bush, as you know. I don't know. This was on page ID 3081. I'm not sure. It was certainly part of the record and Judge Ludington was there when it was said. Can I address real quick this sheet? Because this sheet was a big deal. Judge Ludington, so Tom Davidson, the 35-year-old decision maker, said Ken Lowe was a poor performer. He was in the bottom 10%. I can prove this because I have a sheet that was made and sent to corporate out in Arizona that shows that he was at the bottom 10%. We filed a motion. Judge Ludington granted the motion and said, you must produce the sheet that Tom Davidson did that shows that Ken Lowe was a poor performer. Because that was one of shifting rationales that they had. He says today that he wasn't, but it was at one point they said he was a poor performer. They produced the sheet. The sheet said nothing. It had Mr. Lowe's performance and it said he was meeting all expectations. At trial, when this was presented to Mr. Davidson live in front of the jury, for the first time he said, oh, this isn't my sheet. I know nothing about this sheet. Are you talking about a hard copy sheet or are you talking about a file? It's a spreadsheet. I copied it into the... I don't know. Is it a hard copy that you're talking about? It's a file. You're saying a computer file. It's a computer file. Your opposing counsel said that there was a portion of this file that would have revealed whatever Mr. Davidson was saying. I think that's a pretty incredible assertion. Judge Ludington didn't say you can only produce half the file. He said produce the entire file. They represented under oath that it was the entire file. When he was cross-examined at trial for the first time, he said, oh, and then counsel tried to explain this wasn't in evidence. This was never in evidence. This was counsel's argument. Counsel's argument to the judge to explain why they violated his court order to produce the entire file was, well, there was a hidden cell. They never provided any testimony to support that. They never provided any affidavit or support for that proposition. It was simply counsel's argument. The judge didn't buy it and he said that in any event... The hidden cell was never produced and that's why you had the adverse... Yes. Yes, your honor, which was under Michigan, which was under 6.01, which allows the jury in adverse inference. Okay, well we've heard your arguments. We appreciate it from both counsel and we will take the matter under submission. The clerk may adjourn the court.